[Cite as *Ulinski v. Byers*, 2015-Ohio-282.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CHRISTOPHER K. ULINSKI, TRUSTEE
OF THE RADER FAMILY
IRREVOCABLE TRUST U/A/D
DECEMBER 10, 1993

      Appellant

      v.

PETER BYERS, et al.

      Appellees

C.A. No.     27267

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2013-CV-00003

DECISION AND JOURNAL ENTRY

Dated: January 28, 2015

BELFANCE, Presiding Judge.

{¶1} Appellant, Christopher Ulinski, appeals from the order of the Summit County Court of Common Pleas, Probate Division, removing him as trustee of the Rader Family Irrevocable Trust ("the Rader Trust"). This Court affirms.

I.

{¶2} On December 10, 1993, Lewis and Gwendolyn Rader ("the Raders") executed the Rader Trust and named its drafter, Mr. Ulinski, as trustee. The Raders created the trust for the purpose of holding various assets for the benefit of their family and, in particular, their grandchildren. The trust provided that, upon its creation, Mr. Ulinski would divide its funds into separate, equal shares for each of the Raders' grandchildren, with the exception of two.[1] It

---

[1] The Rader Trust excluded Jody Bishop and Heather Bishop as beneficiaries of the trust.

further provided that, after the Raders died, Mr. Ulinski would be responsible for distributing those shares to the grandchildren. Gwendolyn Rader died on September 20, 2011, and her husband, Lewis Rader, died on October 5, 2011. There is no dispute that, after their deaths, the Rader Trust received approximately $250,000 from their life insurance policy.

{¶3} The Rader Trust specifically named five of the Raders' grandchildren as primary beneficiaries of the trust. Those five grandchildren were: Peter Byers, Berkley Byers, Rebecca Minerva Byers, Taylia Waller aka Bishop, and Terra Adams aka Bishop (collectively, "the Primary Beneficiaries"). It was the position of Mr. Ulinski, however, that the Primary Beneficiaries were not the only grandchildren who would receive a share of the trust. Mr. Ulinski read the trust to entitle all of the Raders' surviving grandchildren to a share, with the exception of the two who had been specifically excluded. Consequently, when the Raders died, Mr. Ulinski did not give the Primary Beneficiaries their shares. Instead, he hired a search firm to identify all of the Raders' surviving grandchildren, with the exception of the two excluded by the trust. The search was completed in January 2012 and uncovered 26 grandchildren, including the Primary Beneficiaries. Mr. Ulinski then notified the Primary Beneficiaries and the other 21 grandchildren identified by the search ("the Potential Beneficiaries") of their status as beneficiaries of the Rader Trust.

{¶4} On January 10, 2013, two of the Primary Beneficiaries filed a complaint for declaratory judgment in the probate court. The complaint named Mr. Ulinski as a defendant, as well as the remaining Primary Beneficiaries and seven of the Potential Beneficiaries. The complaint alleged that Mr. Ulinski had incorrectly identified the Potential Beneficiaries named therein "and other unknown persons" as beneficiaries of the trust when, in fact, they were not.

Consequently, the complaint sought a declaration that the Primary Beneficiaries were "the only persons entitled to receive the Trust assets upon distribution."

{¶5}   Mr. Ulinski answered the complaint. Additionally, he filed a cross-claim against the Potential Beneficiaries named in the complaint and a third-party complaint against the Potential Beneficiaries who had not yet been named. Mr. Ulinski alleged that, through a search firm, he had identified all of the Raders' surviving grandchildren. He further alleged that the Rader Trust contained conflicting language, such that it was unclear to him whether he was to distribute its assets strictly to the Primary Beneficiaries or to all 26 surviving grandchildren. He asked the court to declare the beneficiaries of the trust and the manner in which he should distribute its assets.

{¶6}   On August 30, 2013, Mr. Byers, one of the Primary Beneficiaries, filed a motion to remove Mr. Ulinski as trustee of the Rader Trust. Mr. Byers alleged that, since becoming trustee in 1993, Mr. Ulinski had been convicted of fraud and disbarred. He also alleged that Mr. Ulinski had demonstrated both incompetence and negligence in his role as a trustee. According to Mr. Byers, since redeeming the Raders' $250,000 insurance policy, Mr. Ulinski had "disbursed to himself and others at least $25,000.00 * * * to collect Trustee fees for services never rendered, to pay for his belated search for the Rader's (sic) heirs, and to pay lawyers hired to defend his incompetence, neglect, and inaction." Mr. Byers asked the court to immediately remove Mr. Ulinski as trustee. Several of the Potential Beneficiaries joined in his motion while another faction of the Potential Beneficiaries filed a brief in opposition. Mr. Ulinski also filed a brief in opposition, and Mr. Byers filed a reply. Additionally, Mr. Ulinski filed a supplemental response with the court's permission.

{¶7}    At the same time that the parties were either pursuing or opposing the motion to remove, the Primary Beneficiaries and the Potential Beneficiaries participated in a court-ordered mediation.    The two groups reached a settlement, which entitled each of the Potential Beneficiaries who had participated in the litigation to receive a $5,000 distribution.[2]    On December 18, 2013, several of the Potential Beneficiaries filed a motion to enforce their settlement.  In their motion, they alleged that it was their

> understanding that because of a pending motion to remove the trustee, trustee's counsel [was] reluctant to make [the agreed upon] distributions unless the same [were] approved by [the] Court and the trustee [was] held to be without liability to make the [] distributions as set forth in the settlement agreement.

They asked the court to issue an order effectuating the terms of the settlement.  Additionally, Mr. Byers filed a motion in which he asked the court to hold in abeyance any ruling on his motion to remove Mr. Ulinski as trustee, pending enforcement of the settlement.  The court agreed to hold the motion to remove in abeyance until further notice and issued an order to that effect.

{¶8}    Within days of the trial court's order, Mr. Ulinski filed a brief in which he opposed the settlement agreement.  On January 6, 2014, over Mr. Ulinski's objection, the court ordered the settlement.  Specifically, it ordered Mr. Ulinski to pay $5,000 to each of the Potential Beneficiaries named within its order.

{¶9}    On February 6, 2014, Mr. Ulinski filed a motion for summary judgment.  He acknowledged that the deadline the court had set for the filing of dispositive motions had expired, but asked the court to accept his late filing on the basis that the settlement left no genuine issues of material fact for trial.  He noted that he was in the process of making distributions to the Potential Beneficiaries in accordance with the settlement order, that the Rader

---

[2] The court entered a default judgment against two of the Potential Beneficiaries who were served with the complaint, but never responded.

Trust currently had a balance of $181,299.16, and that "[t]rustee fees in the amount of $2,487.50 and reasonable billed attorney fees incurred by the Trustee in the amount of $8,702.00 [had] not yet been charged to the Trust * * *." He asked the court to declare all the parties receiving trust funds to be beneficiaries and to order him to distribute the remaining balance of the trust to the three remaining Primary Beneficiaries,[3] less his trustee fees and reasonable attorney fees.

{¶10} On February 14, 2014, the three remaining Primary Beneficiaries filed both an objection to Mr. Ulinski's summary judgment motion and a renewed motion to remove him as trustee. They cast Mr. Ulinski's motion as "untimely, defective, unnecessary, and self-serving," noting that it failed to benefit the Rader Trust in any manner and only served to drain more of its assets. In their renewed motion to remove, they argued that Mr. Ulinski had already collected a significant portion of the trust for himself and his attorneys such that less than 75% of the funds in the Rader Trust were left for the beneficiaries. They asked the court, not only to remove Mr. Ulinski as trustee, but also to order him to return the trust funds and to award them punitive damages and attorney fees. Mr. Ulinski was not served with a copy of either the objection to his summary judgment motion or the renewed motion to remove him as a trustee.

{¶11} On February 25, 2014, the trial court denied Mr. Ulinski's summary judgment motion as untimely and granted the motion to remove him as trustee. Yet, the court did not order Mr. Ulinski to refund the trust. Instead, the court noted that it would address that issue by separate order, if the successor trustee opted to pursue it.

---

[3] During the litigation, two of the Primary Beneficiaries assigned their rights to the remainder of their group. As such, only three of the Primary Beneficiaries remained.

{¶12} Mr. Ulinski now appeals from the trial court's decision to remove him as trustee of the Rader Trust and raises four assignments of error for our review. For ease of analysis, we combine the assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING A MOTION TO REMOVE TRUSTEE THAT WAS NOT SERVED UPON DEFENDANT-APPELLANT, CHRISTOPHER K. ULINSKI, TRUSTEE OF THE RADER FAMILY IRREVOCABLE TRUST U/A/D DECEMBER 10, 1993 ("TRUSTEE").

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RULING ON AND GRANTING A MOTION TO REMOVE TRUSTEE PRIOR TO THE EXPIRATION OF THE FOURTEEN (14) DAY WAIT-PERIOD FOR RULING ON A MOTION PROVIDED IN SUMMIT COUNTY COURT OF COMMON PLEAS, PROBATE DIVISION LOCAL RULE 57.1(C).

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING A MOTION TO REMOVE TRUSTEE WITHOUT HOLDING AN ORAL HEARING AFTER AN ORAL HEARING WAS REQUESTED BY THE TRUSTEE.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEE EXPENDED $25,000 FROM ASSETS OF THE RADER FAMILY IRREVOCABLE TRUST U/A/D DECEMBER 10, 1993 (THE "TRUST") TO CONDUCT A NATIONAL SEARCH FOR THE GRANDCHILDREN BENEFICIARIES OF THE TRUST."

{¶13} In his assignments of error, Mr. Ulinski argues that the probate court erred by removing him as trustee of the Rader Trust. Specifically, he argues that the court erred by removing him: (1) pursuant to a motion with which he had not been served; (2) prior to the expiration of the 14-day response period triggered by local rule; (3) without holding a hearing;

and (4) based, in part, on an erroneous factual finding.  For the reasons set forth below, we reject Mr. Ulinski's assignments of error and affirm the judgment of the trial court.

{¶14}  R.C. 2101.24 outlines the jurisdiction of the probate court and provides that "[t]he probate court has concurrent jurisdiction with, and the same powers at law and in equity as, the general division of the court of common pleas to issue writs and orders, and to hear and determine * * * [a]ny action that involves an inter vivos trust * * *."  R.C. 2101.24(B)(1)(b).  *Accord* R.C. 5802.03.  R.C. Chapters 5801 to 5811 "apply to charitable and noncharitable inter vivos express trusts * * *."  R.C. 5801.02.  Under R.C. 5807.06:

> (A) The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative.
>
> (B) The court may remove a trustee for any of the following reasons:
>
> (1) The trustee has committed a serious breach of trust;
>
> (2) Lack of cooperation among cotrustees substantially impairs the administration of the trust;
>
> (3) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries.

"The decision whether to remove a trustee lies within the sound discretion of the probate court, and an appellate court will not reverse that decision absent a showing of a clear abuse of that discretion."  *In re Trust Estate of CNZ Trust*, 9th Dist. Lorain No. 06CA008940, 2007-Ohio-2265, ¶ 16.

{¶15}  There is no dispute that Mr. Ulinski was not served with the motion that the three remaining Primary Beneficiaries filed on February 14, 2014, renewing the request to remove him as trustee.  There is also no dispute that the court removed Mr. Ulinski as trustee on February 25, 2014, 11 days after the filing of the renewed motion.  In his first and second assignments of error, Mr. Ulinski challenges the court's removal decision on procedural grounds.  He argues

that, because proper service is mandatory under the Ohio Civil Rules of Procedure, the court could not consider the renewed motion to remove him as trustee. *See Pla v. Wivell*, 9th Dist. Summit No. 25814, 2011-Ohio-5637, ¶ 12-15. He further argues that, because the local rules of the probate court afford a party a 14-day window in which to respond to written motions, the court could not rule on the renewed motion to remove him as trustee before that window expired. *See* Loc.R. 57.1(C) of the Summit County Court of Common Pleas, Probate Division.

{¶16} Mr. Ulinski is correct in his assertion that "[p]roper service under the civil rules is mandatory." (Internal quotations and citations omitted.) *Pla* at ¶ 14. Due to the mandatory nature of the rules, a trial court may not consider a motion that has not been served on a party in conformance with Civ.R. 5(A). *See id.* at ¶ 15. In this particular case, however, the fact that Mr. Ulinski was not served with the renewed motion to remove him as trustee does not end the analysis. That is because a probate court also "may remove a trustee on its own initiative." R.C. 5807.06(A).

> Although removal proceedings are commonly instituted by the filing of a motion, upon a proper showing the Court may act sua sponte. This Court has previously opined that a probate court is fully justified in removing a fiduciary if the fiduciary's conduct has come to the knowledge of the probate court in any manner, so long as the fiduciary has had the opportunity to defend his conduct. In fact, this Court further opined that, where the probate court learns of a fiduciary's misconduct by any means, the court may sua sponte remove the fiduciary, and it would have been the court's duty to do so. Accordingly, the probate court possesses an inherent power and affirmative duty to remove a fiduciary, even in the absence of any motion, where evidence of the fiduciary's actions which are contrary to the interest of the trust are demonstrated by any means.

(Internal quotations, citations, and alteration omitted.) *In re Estate of Howard*, 9th Dist. Lorain No. 05CA008730, 2006-Ohio-2176, ¶ 16. As long as Mr. Ulinski had the opportunity to defend his conduct, the court had the authority to remove him as trustee, notwithstanding any procedural defects surrounding the renewed motion to remove. *See id. See also Tomazic v. Rapoport*, 8th

Dist. Cuyahoga No. 97937, 2012-Ohio-4402, ¶ 18 ("[E]ven assuming * * * [the movant] had no standing to seek [the trustee's] removal * * *, the court on its own initiative had jurisdiction to hear evidence relating to [the trustee's] administration of the Trust."). Mr. Ulinski's first and second assignments of error, therefore, lack merit.

**{¶17}** With regard to having had the opportunity to defend his conduct, Mr. Ulinski argues that the court erred by removing him as trustee without first holding a hearing. He relies upon R.C. 2109.24 and several cases interpreting that statute. R.C. 2109.24, however, only applies to the removal of a trustee from a testamentary trust. Alan Newman, *The Uniform Trust Code: An Analysis of Ohio's Version*, 34 Ohio N.U.L.Rev. 135, 179 (2008), fn. 290. When considering the removal of a trustee from an inter vivos trust, R.C. 5807.06 applies. *Id. See also* R.C. 5801.02 (R.C. Chapters 5801 to 5811 "apply to charitable and noncharitable inter vivos express trusts"). Mr. Ulinski is, therefore, incorrect in his reliance upon R.C. 2109.24.[4]

**{¶18}** On its face, R.C. 5807.06 does not require a court to hold a hearing before removing a trustee. Even so, "due process may require a hearing prior to the removal of a fiduciary." *In re Estate of Howard* at ¶ 13.

> In regard to the procedural mechanisms of hearings, this Court has stated * * * [that] "[i]t is acceptable practice for trial courts to dispose of motions without formal hearing, so long as due process rights are afforded. There is no requirement that a hearing be conducted in a specific manner. It may indeed, be formal, with examination of witnesses and oral arguments. The requirement of a 'hearing' may be satisfied when the judge requests submission of affidavits and/or briefs by a certain date. Or, [], it may be had simply of the papers filed. The type of hearing to be had is discretionary with the judge."

---

[4] We would note that, in the court below, Mr. Ulinski expressly argued that R.C. 2109.24 does not apply to inter vivos trusts. The position he takes on appeal is, therefore, contrary to the position he took in the court below.

(Internal citation omitted.) *Id.*, quoting *Wilson v. Alside, Inc.*, 9th Dist. Summit No. 11667, 1985 WL 10679, *1 (Apr. 10, 1985).

{¶19} At the time the court removed Mr. Ulinski as trustee, it had before it: (1) Mr. Byers' original motion to remove Mr. Ulinski; (2) a brief in opposition to the motion, filed by a faction of the Potential Beneficiaries; (3) a brief in support of the motion, filed by another faction of the Potential Beneficiaries; (4) a brief in opposition to the motion, filed by Mr. Ulinski; (5) a reply brief filed by Mr. Byers; and (6) a supplemental brief filed by Mr. Ulinski. Additionally, the court had before it Mr. Ulinski's deposition and his motion for summary judgment. In all of his filings and his deposition, Mr. Ulinski outlined the measures he had taken in his role as trustee and defended his actions. Mr. Ulinski, therefore, had the opportunity to present in detail his position on the issue of his fitness to serve as trustee. Even so, he argues that he was prejudiced by the court's failure to hold a hearing for two reasons.

{¶20} First, Mr. Ulinski argues that he was prejudiced by the court's failure to hold a hearing because "many of the [P]otential [B]eneficiaries * * * took differing positions on whether or not [he] should be removed" and those positions could have been supported with evidence at a hearing. As previously noted, a faction of the Potential Beneficiaries initially filed a brief in opposition to Mr. Ulinski's removal. By the time of the renewed motion to remove Mr. Ulinski, however, all of the Potential Beneficiaries and the Primary Beneficiaries had reached a settlement. Additionally, the same group of Potential Beneficiaries who had initially opposed Mr. Ulinski's removal filed a motion to enforce that settlement, asking the court to order Mr. Ulinski to pay them their money. Although Mr. Ulinski argues that the Potential Beneficiaries "had their own sources of evidence and arguments concerning [his] potential removal * * * which should have been heard at a hearing," the Potential Beneficiaries never requested a

hearing and the argument that they might have involved themselves in a removal hearing after the court had already approved their settlement is mere speculation. More importantly, the Potential Beneficiaries have not appealed from the court's removal order, and Mr. Ulinski cannot assert an argument on their behalf.

{¶21} Mr. Ulinski's second argument as to why the court's failure to hold a hearing prejudiced him is that, in the absence of a hearing, the court made erroneous factual findings in its removal order. Mr. Ulinski only identifies one factual finding that the court made in error. That allegedly erroneous factual finding is also the subject of Mr. Ulinski's fourth assignment of error.

{¶22} In its removal order, the court wrote that Mr. Ulinski expended $25,000 of the trust's assets hiring a national search firm to identify all of the Raders' surviving grandchildren. Mr. Ulinski argues that the $25,000 figure is not supported by the record. He concedes that he hired a national search firm and that he expended trust assets to pay for the search, but argues that the amount he expended on the actual search was far less than $25,000. Even if he is correct, however, Mr. Ulinski must demonstrate that the court's error affected his substantial rights. *See* Civ.R. 61.

{¶23} In his reply brief in support of his original motion to remove Mr. Ulinski as trustee, Mr. Byers wrote that a copy of Mr. Ulinski's trust expenditures showed "total trust expenditures by Mr. Ulinski as of April 30, 2013, of over $30,000.00, or more than ten percent of the trust corpus, to collect trustee fees, to conduct a nationwide search for the Raders' heirs, and to pay his lawyers to defend his actions." One of the exhibits Mr. Byers attached to his reply was a photocopy of the check register for the trust account. The check register showed a payment of $2,342.63 to the national search firm that Mr. Ulinski hired. It also showed that,

from December 2011 to April 2013, Mr. Ulinski withdrew $16,721.60 to pay his attorneys and withdrew another $11,932.91 for a cost advance on the heir search, litigation expenses, and trustee fees. Accordingly, from December 2011 to April 2013, Mr. Ulinski withdrew $30,997.14 from the trust. During that same time period, he did not distribute any money to any of the Raders' grandchildren.

{¶24} Mr. Ulinski contacted the Primary Beneficiaries and the Potential Beneficiaries by letter in March 2012. In the letter he addressed to Mr. Byers, Mr. Ulinski wrote that, after having engaged the services of a national search firm, he was "now confident that [he] kn[e]w who the beneficiaries of the trust [were]." Nevertheless, Mr. Ulinski wrote that there was a matter that needed to be resolved before he could make any distributions. Specifically, he indicated that the Raders had also executed a revocable trust and that, consistent with his duties as trustee, he might have to use the funds in the Rader Trust to loan money to or purchase assets from their revocable trust. He also wrote, however, that the trust document for the revocable trust could not be found, so there was "presently * * * no agreement as to the identity of the beneficiaries under that document."

{¶25} At his May 2013 deposition, Mr. Ulinski admitted that he had drafted the Rader Trust. He testified that, while it would have been his custom to review other estate planning documents that were in place at the time he was drafting an instrument, he could not specifically recall if he had reviewed the revocable trust that the Raders had executed the year before he drafted the Rader Trust for them. He stated that it would not have been his custom to retain a copy of their revocable trust in his file because he did not create that trust document. Nevertheless, he maintained that he could not distribute the funds in the Rader Trust because

there was an implied relationship between it and the revocable trust. At the time of Mr. Ulinski's deposition, the revocable trust document still had not been found.

{¶26} With regard to drafting the Rader Trust, Mr. Ulinski testified that the Raders provided him with the names of five of their grandchildren, who would be listed as the Primary Beneficiaries, and two of their grandchildren, who would be excluded from the trust. Mr. Ulinski did not know why the Raders elected their grandchildren as beneficiaries rather than their children. He did not know why the Raders excluded two of their grandchildren as beneficiaries. He did not know if the Raders had more than seven grandchildren at the time that he drafted the document. Further, he did not know why it would have been necessary to identify the Raders' five grandchildren as "primary beneficiaries" if they were the only beneficiaries listed within the document. Mr. Ulinski testified that, during the almost 20-year period he had administered the trust, he understood its beneficiaries to be the grandchildren of the Raders, but he did not know who those individuals were.

{¶27} In addition to using the funds in the Rader Trust to pay for a national search and for his attorney fees, Mr. Ulinski testified that he had paid himself his trustee fees out of the trust at a rate of $200 per hour. In the motion for summary judgment that he filed on February 6, 2014, Mr. Ulinski wrote that he was making the $5,000 distributions to the Potential Beneficiaries and that, of the original $251,109.70 deposited into the trust account, $188,299.16 remained.[5] He also wrote, however, that he had incurred an additional $11,189.50 in attorney fees and trustee fees that he had yet to charge to the account.

---

[5] Mr. Ulinski did not indicate how many of the Potential Beneficiaries, if any, had been paid as of the date of his filing.

{¶28} In ordering Mr. Ulinski's removal, the trial court heavily emphasized the fact that Mr. Ulinski had drafted the Rader Trust. The court wrote that it

> struggle[d] to understand how a lawyer, even if he no longer practices law, or a trustee acting within a standard of reasonable care could be unable to interpret his own document. If he followed his clients' instructions in the first instance, which the Court assumes he did, he would have accurate knowledge of the intent of the trust settlors and could comprehend no ambiguity. Instead, he spent $25,000 of trust assets to figure out who the beneficiaries [were] of the trust he drafted and oversaw and triggered a lawsuit to clarify his own document.

The court noted the large amount of money that Mr. Ulinski had already withdrawn from the trust and the additional money that he planned on withdrawing. The court cast Mr. Ulinski's actions, including his initial refusal to comply with the settlement and his late summary judgment filing, as actions that delayed the closing of the trust. The court noted that the litigation "ha[d] the potential to consume all of the trust assets so that by the time the trust corpus is distributed, there may be no proceeds left." It ultimately found that it was proper to remove Mr. Ulinski due to his "unfitness, unwillingness, or persistent failure * * * to administer the trust effectively." R.C. 5807.06(B)(3).

{¶29} Mr. Ulinski is correct that the record does not support the court's solitary finding that he expended $25,000 of the trust's assets strictly on the national search that he authorized. Nevertheless, Mr. Ulinski has not shown that the court's erroneous factual finding prejudiced his substantial rights. *See* Civ.R. 61. *See also Kent v. Kent*, 9th Dist. Summit No. 26072, 2012-Ohio-2745, ¶ 11-13 (erroneous factual finding amounted to harmless error). Mr. Ulinski does not take issue with any of the additional evidence contained in the record below upon which the trial court based its decision to remove Mr. Ulinski as trustee pursuant to R.C. 5807.06(B)(3),[6]

---

[6] R.C. 5807.06(B)(3) permits removal of a trustee "[b]ecause of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries."

nor does he argue that based upon that evidence, the trial court's decision was unreasonable, arbitrary or unconscionable. Instead, he argues that the court erred in its one factual finding and that, had he been afforded a hearing, the court would have been disabused of the notion that he spent $25,000 on a national search for the beneficiaries of the Rader Trust. Because the court's finding did not affect Mr. Ulinski's substantial rights, however, his arguments lack merit. Therefore, Mr. Ulinski's third and fourth assignments of error are overruled.

III.

**{¶30}** Mr. Ulinski's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DAVID W. WOODBURN, PATRICK J. WESCHLER, and MATTHEW R. DUNCAN, Attorneys at Law, for Appellant.

TIMOTHY H. CHAMPION and DAVID C. CHAMPION, Attorneys at Law, for Appellee.