[Cite as *D.M. v. A.M.*, 2018-Ohio-4251.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF LORAIN | ) | | |

D.M.

     Appellant

     v.

A.M.

     Appellee

C.A. No.    17CA011171

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16JG48710

DECISION AND JOURNAL ENTRY

Dated: October 22, 2018

TEODOSIO, Presiding Judge.

{¶1} D.M. appeals the June 2017 judgment of the Lorain County Court of Common Pleas, Juvenile Division, adopting the magistrate's decision and denying her complaint for grandparent visitation. We affirm.

I.

{¶2} In May 2016, D.M. filed a complaint for visitation rights as to her three grandchildren. The children were born to her son, E.M, and his wife, A.M. E.M. took his own life in 2011. D.M. alleged that after her son's death, A.M. began to limit her access to the children, which led to the filing of her complaint.

{¶3} A hearing before the magistrate was conducted in November 2016, with the magistrate issuing a decision on January 30, 2017, denying D.M.'s complaint for grandparent visitation. D.M. filed objections to the decision, and on June 19, 2017, the trial court adopted the magistrate's decision. D.M. now appeals, raising six assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN
DENYING APPELLANT'S COMPLAINT TO ESTABLISH GRANDPARENTS
RIGHTS, AS SUCH A DENIAL WAS NOT SUPPORTED BY THE
EVIDENCE PRESENTED, TO BE IN THE BEST INTEREST OF THE MINOR
CHILDREN.

{¶4} In her first assignment of error, D.M. argues the trial court abused its discretion in denying visitation rights because establishing a visitation schedule was in the best interests of the children. We disagree.

{¶5} "Generally, the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

{¶6} "A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion." *Estate of Harrold v. Collier*, 9th Dist. Wayne No. 06CA0010, 2006-Ohio-5634, ¶ 6. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶7} R.C. 3109.11 provides:

If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the

parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code.

{¶8} The relevant factors under R.C. 3109.051 that were considered by the trial court

included:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

* * *

(7) The health and safety of the child;

* * *

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

* * *

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

* * *

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶9}** "Ohio statutes allow grandparental visitation only if it is in the grandchild's best interest." *Estate of Harrold v. Collier*, 9th Dist. Wayne No. 03CA0064, 2004-Ohio-4331, ¶ 13. Furthermore, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 12.

**{¶10}** In making its determination, the trial court separated the four factors it considered the most important from the other factors, stating that the most relevant factors were the mental and physical health of all parties, the willingness of the parties to reschedule companionship time, the wishes and concerns of the children's parent, and the health and safety of the children. In discussing the other factors, the decision stated: "For the relevant factors of less significance,

the court finds as follows * * *." The decision went on to briefly address the factors, including the first factor—the interactions and interrelationships between the children and D.M.—stating: "The children and [D.M.] have an established relationship, both prior to (for the older two children) and after (all three children) their father's death in 2011."

{¶11} With regard to the first factor, D.M. states she "does not agree with the finding that her relationship with the minor children * * * is a factor of lesser importance." The trial court considered the prior relationship as one of several relevant factors as required by R.C. 3109.11 and R.C. 3109.051. The fact that D.M. disagrees with the trial court's decision to weigh the first factor as one of "less significance" than four other factors does not amount to an abuse of discretion by the trial court.

{¶12} D.M. next disputes the trial court's findings that A.M. was willing to be flexible and that D.M. gave the impression of being inflexible. In discussing the willingness of the parties to reschedule companionship time, the trial court found that A.M. "appeared to make attempts to work [D.M.]'s desired time with the children around the children's availability to balance the relative importance of the relationship and activity in order to foster the relationship." The trial court further found D.M. "appeared bitter that she could not have the children when she wanted them despite acknowledging that the children had previous[ly] scheduled activities" and "gave the impression to the court that if she would be given a scheduled weekend, that she would be inflexible in working with [A.M.] in choosing a different weekend in order to accommodate the children's desires and activities." We note that we discuss these specific findings in detail under assignments of error three and five, determining the trial court did not abuse its discretion in making the findings.

**{¶13}** D.M. also contends that the trial court erred in relying on the proposition that her mental health is a safety concern for the children. Additionally, and although not specifically listed as a factor, D.M. argues the trial court should have considered the fact that she is the children's connection to the family of their deceased father, and that it falls to her to carry on family traditions and the memory of their father.

**{¶14}** With regard to mental health concerns, the magistrate's decision stated:

[D.M.] testified she is still in counseling due to her son's manner of death and her grief over this issue. As admitted to by [D.M.], her mental health issues have caused issues in her interactions with the children.

Further, the court finds it distressing that [D.M.] obsesses over her deceased child which is transferred to her grandchildren but alludes an indifference to the strained relationship with her living daughter. [D.M.]'s lack of showing of her progress in dealing with her mental health issues is concerning to the court. The court finds that [D.M.]'s mental health issues, despite being addressed, create risk to the children.

**{¶15}** The trial court noted testimony regarding certain behaviors and actions taken by D.M. after her son's death, including taking her grandchildren to their father's grave one week after his burial without A.M.'s permission. A.M. testified that in August 2012, she received text messages from D.M. indicating that she was being disrespectful by not taking her children to the cemetery often enough. When A.M. called D.M. to talk about the issue, she testified that D.M. accused her of being responsible for the death of her husband. After these events, A.M. supervised her children's visitations with D.M. for approximately one year. A.M. further testified that prior to the lawsuit, the children continued to have contact with D.M. and that she had never denied contact. If a specific date did not work out, she would attempt to find an alternative date. She testified that she was surprised by the lawsuit and had asked her oldest child if D.M. had voiced any complaints about her. It was at that time that A.M. learned that

D.M. had told the children that their mother was responsible for their father's death as they were driving home from an outing at a Chuck E. Cheese restaurant.

{¶16}  The trial court also noted the testimony of D.M.'s daughter, who testified as to having a strained relationship with her mother.  She further testified that her mother had accused A.M. of being responsible for her brother's death and asked her not to testify on behalf of A.M.

{¶17}  Also among the four factors found to be most relevant by the trial court were the wishes and concerns of the children's parent and the health and safety of the children.  The trial court stated that the health and safety of the children was the paramount issue.  The court noted that the two oldest children went through therapy after their father's death and that the middle child had relapses of grief and was still in therapy due to the severity of his reaction to the tragedy.  The trial court found the middle child most at risk from D.M.'s actions and hostile attitude toward A.M.

{¶18}  The trial court further found that D.M.'s statement to the children accusing A.M. of being responsible for their father's death was not in the best interest of the children and was disruptive of the parent-child relationship.  The court found that A.M.'s limiting of contact between her children and D.M. was for the health and safety of the children, and not due to the damaged relationship between the parties.  Under Ohio law, A.M.'s preference for her children to not have visitation with D.M. at the present time is to be given special weight.  *See Harrold*, 107 Ohio St.3d at 47, 2005-Ohio-5334 at ¶ 12.

{¶19}  We conclude it was not an abuse of discretion for the trial court to find that D.M. failed to prove that it was in the children's best interests for D.M. to have a court-ordered companionship schedule.  The trial court considered all relevant factors under R.C. 3109.051, and its decision was not unreasonable, arbitrary, or unconscionable.

{¶20} D.M.'s first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

[THE] TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FINDING THAT APPELLANT'S COUNSELING INTERFERED WITH THE MINOR CHILDREN.

{¶21} In her second assignment of error, D.M. argues the trial court abused its discretion in finding that her counseling interfered with the children. In her brief, D.M. states: "There was no credible evidence presented that showed any correlation between Grandmother counseling [sic] and any effect on the minor children."

{¶22} There is no such finding, either in the magistrate's decision or in the order of the trial court adopting said decision, and D.M. fails to direct us to any such finding in the record as required by App.R. 16(7).

{¶23} D.M.'s second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

[THE] TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FINDING THAT APPELLANT GAVE THE IMPRESSION SHE WOULD BE UNWILLING TO BE FLEXIBLE WITH APPELLEE.

{¶24} In her third assignment of error, D.M. argues the trial court erred in finding that she would be unwilling to be flexible with A.M. We disagree.

{¶25} Although D.M. contends that the trial court abused its discretion, our review here is appropriately undertaken under a different standard of review. "An appellate court reviews a trial court's factual finding to determine if the finding was against the manifest weight of the evidence." *Zaccardelli v. Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878, ¶ 7. When reviewing the manifest weight of the evidence in civil matters, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Even if a trial court makes an incorrect factual finding, however, the appellant must show "that the court's erroneous factual finding prejudiced [his or her] substantial rights." *Ulinski v. Byers*, 9th Dist. Summit No. 27267, 2015-Ohio-282, ¶ 29. Absent a showing of prejudice, the error will be deemed harmless. *See id*.

{¶26} The magistrate's decision states:

> [D.M.] appeared bitter that she could not have the children when she wanted them despite acknowledging that the children had previous scheduled activities. [D.M.] gave the impression to the court that if she would be given a scheduled weekend, that she would be inflexible in working with [A.M.] in choosing a different weekend in order to accommodate the children's desires and activities.

{¶27} With regard to the issue of scheduling visitation, the transcript provides the following testimony of D.M.:

> Q. [Y]ou state in your complaint that [A.M.] began to limit your access to the children after [E.M.'s] death. That's not exactly true, is it?
>
> A. No. I was able to have them – sometimes I'd call and I wouldn't receive a phone call back for maybe a week or two later. So no, I was limited.
>
> Q. You were not limited?
>
> A. I was limited.
>
> Q. Even though in your Exhibit 2 it appears like there's been quite a bit of contact between you and the children since [E.M.'s] death. You described to – all of the things that you do together with your [grand]children, so how is it that [A.M.] has limited your contact with the [grand]children?
>
> * * *
>
> A. Well, I would hopefully try to get them one night during the month, but like I said, sometimes she didn't get back to me. So there was the Great Wolf Lodge that I wanted to take them to, and that did not work out.

Q. And isn't it true that sometimes you would ask to see the children and the kids already had activities and they weren't able to be with you at your request; is that correct?

A. I've always understood and picked a date that [A.M.] would pick the dates with me that I can have the children, so no.

Q. It's not correct that you would ask for a date and the children might not be available and could not attend?

A. She would give me the date that I can have the kids that would work for her.

{¶28} D.M. further testified that she filed her complaint in order to get a schedule of visitation, stating:

[I]f I had a scheduled agreement I could plan things in advance, you know, like the Great Wolf Lodge thing, you know, I'd be able to plan and schedule that to take them there. Where unscheduled, it didn't work out for me planning things. It had to be kind of like, okay, you're getting them here, what are you going to do, that kind of thing.

{¶29} The usefulness of this testimony to our review is limited. The magistrate's decision that was adopted by the trial court stated that D.M. "appeared bitter that she could not have the children when she wanted" and "gave the impression * * * that she would be inflexible * * *." These statements amount to observations by the magistrate that go beyond what the mere text of the transcript is able to communicate. These are observations that may necessarily rely upon tone, demeanor, facial expressions, body language, gestures, and any other nonverbal cues that are not accessible to this Court. D.M. has failed to show that the trial court clearly lost its way in its findings. We therefore conclude D.M. has failed to show the trial court's findings were against the manifest weight of the evidence.

{¶30} D.M.'s third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

[THE] TRIAL COURT COMMITTED AN[] ABUSE OF DISCRETION IN FINDING THAT APPELLANT'S STATEMENTS CAUSED MENTAL DISTRESS TO THE MINOR CHILDREN.

{¶31}  In her fourth assignment of error, D.M. argues that the trial court erred in finding that her statements caused mental distress to the children.  She contends that there is no evidence that her statements to the children telling them that their mother is to blame for their father's death caused them any mental distress.

{¶32}  The magistrate's decision stated: "[D.M.'s] action in blaming [A.M.] for the cause of father's death to the children appears to the court as being detrimental to the health and safety of the two older children due to the mental distress this causes them."  Although it is arguably axiomatic that statements from a grandmother to her grandchildren accusing their mother of being the cause of their father's suicide would cause mental distress to the children, the transcript does not provide direct support for the statement that the children experienced mental distress as a result of D.M.'s comments.

{¶33}  To the extent this constitutes an erroneous finding by the trial court, we conclude that D.M. was not prejudiced by such error.  *See Ulinski* at ¶ 29. "Under Rule 61 of the Ohio Rules of Civil Procedure, harmless errors are to be disregarded." *Oak Park Mgt. Corp. v. Via*, 9th Dist. Wayne No. 07CA0022, 2008-Ohio-2493, ¶ 5.  As our discussion under assignment of error one indicates, multiple factors were considered in the trial court's determination that D.M. had failed to prove that it was in the best interests of the children to have a companionship schedule with her.  If the language finding that the children suffered mental distress as a result of D.M.'s comments were removed, it would not substantially alter the trial court's analysis.  Nor would it

negate the potential harm that such a comment, or further such comments, could have on the children and their relationship with their mother.

**{¶34}** D.M.'s fourth assignment of error is overruled.

ASSIGNMENT OF ERROR FIVE

[THE] TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FINDING THAT APPELLEE WAS WILLING TO ALLOW APPELLANT ACCESS TO THE MINOR CHILDREN.

**{¶35}** In her fifth assignment of error, D.M. argues the trial court erred in finding that A.M. was willing to allow her access to the children. We disagree.

**{¶36}** As we have noted, "[a]n appellate court reviews a trial court's factual finding to determine if the finding was against the manifest weight of the evidence." *Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878 at ¶ 7.

**{¶37}** The magistrate's decision stated: "[A.M.] appears willing to allow a relationship between the children and [D.M.] despite the inability for [D.M.] and [A.M.] to have a truly healthy relationship." The magistrate's decision went on to state:

> [A.M.]'s actions in limiting [D.M.]'s access to the children are for the children's health and safety and not due to the damaged relationship between the parties. [A.M.] is willing to allow access to the children to [D.M.] in a safe and health[y] manner to prevent ongoing mental trauma to the children.

**{¶38}** After her son's death, but before the present action was filed, D.M. testified that she continued to spend time with the children including time alone with them without their mother present, and continued to do the same types of activities she had done in the past with the children.

**{¶39}** After the action was initiated and A.M. learned of the comment made by D.M. to the children blaming her for their father's death, visits with D.M. were discontinued. On the issue of visitation, A.M. testified as follows:

Q. Do you believe it is in the children's best interests to have an order for visitation with [D.M.]?

A. No.

Q. Why not?

A. I want to be able to decide who my kids see when, how long, without a [c]ourt telling me otherwise.

Q. Do you believe it's in your children's best interest to have a relationship with [D.M.]?

A. Not right now, no.

Q. Okay. Should the Court put on an order for contact between [D.M.] and your children, how would you like to see that done?

A. I would like it to be in a supervised setting.

A.M. further testified:

Q. * * * [I]f there were no court order for [D.M.] to have visitation at this point, and you were going to make that decision, [it] sounds to me as though your decision would be that she would not see them?

A. For right now.

Q. And why for right – and when would she?

A. We'd have to figure that out.

* * *

Q. All right. What makes it not fine now?

A. Well, there were several times I supervised the visits because I was uncomfortable. But she is their grandmother, and I have always respected that. But when I found out that she was undermining -- trying to undermine our relationship with my children, I said enough is enough, and I didn't find that out until after she filed the lawsuit, when she didn't talk to me.

{¶40} Although A.M.'s testimony indicated that she believed it was not in her children's

best interest to have visitation with D.M. for "right now," she also indicated that it could be

determined when visitation could resume. Her testimony further indicated that if the court did put on an order for visitation, she would request that it be in a supervised setting. While it is clear that A.M. believed that visitation with D.M. was not currently in her children's best interest, we cannot say it was against the manifest weight of the evidence for the trial court to find that she appeared willing to allow a relationship between the children and D.M.

**{¶41}** D.M.'s fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR SIX

[THE] TRIAL COURT COMMITTED AN[] ABUSE OF DISCRETION IN FINDING THAT THE COURT CANNOT DRAFT AN ORDER THAT WOULD INSURE THE MENTAL HEALTH OF THE MINOR CHILDREN IS PROTECTED.

**{¶42}** In her sixth assignment of error, D.M. argues the trial court abused its discretion in determining that it could not draft an order that would insure the mental health of the children would be protected. D.M. contends that there was no evidence of any impact to the mental health of the children, and that therefore it was arbitrary and unreasonable for the trial court to find that a visitation order could not be drafted.

**{¶43}** The magistrate's decision stated:

The court finds it cannot draft an order of companionship between [D.M.] and the children that would ensure the children's mental health is protected. [A.M.] is in the best position to gauge [D.M.'s] mental stability and [to determine] the appropriate safeguards for the children in having a relationship with [D.M.].

**{¶44}** In her brief, D.M. notes that if a court relied upon its inability to control the future as the basis of its reasoning to not issue an order, no orders would ever be granted. While generally speaking, such an inference may be true, the trial court in the present case was not speaking in broad generalities, but rather to the specific situation of the case before it. The trial court went on to state that it believed A.M. was in a better position to determine safeguards for

her children's protection. Regardless of whether the contested statement is accurate, we conclude it does not impact the relevant finding made by the trial court that D.M. did not prove that it was in the children's best interests for her to have a court-ordered companionship schedule. *See Oak Park Mgt. Corp.*, 9th Dist. Wayne No. 07CA0022, 2008-Ohio-2493 at ¶ 5 ("Under Rule 61 of the Ohio Rules of Civil Procedure, harmless errors are to be disregarded."). As we have noted, an abuse of discretion is more than an error of judgment and means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219. We cannot conclude that the trial court abused its discretion here.

{¶45} D.M.'s sixth assignment of error is overruled.

### III.

{¶46} D.M.'s assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

BRANDON G. OLIVER, Attorney at Law, for Appellant.

LYNNE SCHWARTZ, Attorney at Law, for Appellee.